## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**AVA R. COLEMAN**                                                                  **PLAINTIFF**

**VS.**                                           **CIVIL ACTION NO. 1:16-CV-00289-LG-RHW**

**MISSISSIPPI DEPARTMENT OF MARINE RESOURCES, et al.     DEFENDANTS**

### MISSISSIPPI DEPARTMENT OF MARINE RESOURCES'
### MEMORANDUM BRIEF OF AUTHORITIES
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Mississippi Department of Marine Resources ("DMR"), by and through

counsel, submits its Memorandum of Authorities in Support of its Motion for Summary

Judgment, pursuant to Fed. R. Civ. P. 56, and would show unto the Court as follows:

### *Facts*

Coleman was employed by the Mississippi Department of Wildlife, Fisheries and

Parks ("DWFP") from 1989 to 2007. *See First Amended Complaint,* [1-2], p. 28. From

1992 to 2007, Coleman was the manager of the Lyman Fish Hatchery in Gulfport, a

facility controlled and managed by DWFP. *Id*. at pp. 28-29. During that time, Coleman

lived on the grounds of the hatchery.  *Ex. 1, Coleman Depo.*, p. 12. In 2007, control and

management of the Lyman hatchery was transferred from DWFP to DMR. [1-2], p. 29.

According to Coleman, about two weeks after the transfer, she was removed from her

position as hatchery manager by Dr. Bill Walker, who was the executive director of DMR

at that time. *Id.*, pp. 63, 67-68. Coleman was told by Walker that she would need to move

out of the residence on the hatchery grounds, but that DMR would "work with her" to

establish a manageable time line for this, considering her needs and concerns. *Ex. 1*., pp. 68-69.

Coleman continued to live at the fish hatchery until sometime shortly after June 2009. *Id*. at p. 96. It is clear that Ms. Coleman had trouble adjusting to her new role. *Id*., generally pp. 63 - 95. Ultimately, Coleman took medical leave from May 2008 to June 2009, purportedly to address mental distress brought on by her changed employment situation. *Id.*, p. 95. Upon her return to work at DMR, Coleman was transferred from the Lyman hatchery to the Office of Marine Fisheries at DMR's headquarters. *Id*. From that point forward, Coleman had no further contact with Joe Zeigler, with whom she had allegedly experienced conflicts. *Id*., p. 99. In her three and one-half hour deposition, Coleman could not point to a single instance of conduct by anyone at DMR against her from June 2009 - forward that could conceivably be classified as sexual harassment.

From June 2009 up until the termination of her employment, Coleman fell under the supervision of Joe Jewell and others. *Ex. 3, Jewell Depo.*, p. 10. Coleman's job in Marine Fisheries was primarily to work on "trip tickets," which are a form of data collection regarding various species of marine life. *Id*., p. 11. Coleman was unhappy with the changes to her employment. *Id*., p. 100. During her time in Marine Fisheries, Coleman was sometimes disruptive and aggressive toward other DMR employees. *Ex. 3, Jewell Depo.*, pp. 22-23, 28-29, 32-35. She brought a guitar to work and would play it during work hours. *Id*., p. 24.

Jamie Miller assumed the position of executive director of the DMR in April 2013.

*Ex. 4, Miller Depo.*, p. 5. In the 2014 session, the Mississippi legislature passed the

"DMR Accountability and Reorganization Act", amending DMR's enacting legislation to

provide that:

> The Executive Director of the Department of Marine Resources shall have the authority to internally reorganize the Department of Marine Resources. For a period of six (6) months after April 16, 2014, the personnel actions of the executive director shall be exempt from State Personnel Board rules, regulations and procedures in order to give the executive director flexibility in making an orderly, effective and timely reorganization of the Department of Marine Resources.

Miss. Code. Ann. § 49-15-11. Amended by Laws 2014, Ch. 496 (S.B. No. 2579), § 1, eff.

from and after passage (approved April 16, 2014). This amendment provided Director

Miller with authority identical to what was provided to the Director in the enacting 1994

legislation. Miss. Code Ann. § 49-15-11 (Rev. 1994); Laws, 1994, ch. 578, §3.

Miller terminated Coleman's employment pursuant to this reorganization. *Ex. 4*,

*Miller Depo.,* pp. 10, 21-23. This was based upon a recommendation from Joe Jewell that

the duties that Coleman was performing for DMR could be more efficiently handled with

other staff. *Id*., pp. 52 - 53. Pursuant to and during the prescribed time of the Act, DMR

terminated the employment of sixteen (16) employees without going through the

procedures set forth by the Mississippi State Personnel Board ("MSPB"). *Ex. 2, Royals*

*Affidavit*. Of those terminated, eleven were male and five were female. *Id*. Four were

under the age of forty. *Id*. The first termination under the Act occurred on May 22, 2014.

*Id*. Ms. Coleman's termination on October 9, 2014, was the final termination pursuant to

the Act. *Id*. Following the termination of Coleman's employment, her job duties were fully assumed by Nadine Ross, a 68 year old female contract worker. *Ex. 3, Jewell Depo*., pp. 11-13.

Coleman instituted this action against DMR and Jamie Miller by filing a Complaint in Harrison County Circuit Court on April 16, 2016. *Complaint* [1-2], p. 3. She filed her First Amended Complaint on or about July 7, 2016. *First Amended Complaint* [1-2], p. 25. The Defendants removed the matter to this Court on or about August 9, 2016. *Notice of Removal* [1]. The Court entered its order dismissing Miller as a defendant in this action on October 4, 2016. *Memorandum Opinion and Order* [13]. In that *Memorandum Opinion and Order*, the Court also dismissed Coleman's claim for breach of contract outright as being time-barred by the applicable statute of limitations. *Id*., p. 13. As such, only certain claims against DMR remain. Those claims are as follows:

1) Claims pursuant to 42 U.S.C. § 1983 ("§ 1983") for alleged violations of Coleman's rights under the Fifth and Fourteenth Amendments to the United States Constitution;

2) Claims pursuant to 42 U.S.C. § 2000e, *et seq*., Title VII of the Civil Rights Act of 1964 ("Title VII"), for alleged gender based discrimination, hostile work environment sexual harassment and "retaliatory treatment";

3) Claims pursuant to 42 U.S.C. § 12101, *et seq*., The Americans with Disabilities Act of 1990 ("ADA"), for alleged discrimination based upon "regarding and/or perceiving an employee as disabled and/or impaired";

4) Claims pursuant to 29 U.S.C. § 621, *et seq*., the Age Discrimination in Employment Act of 1967 ("ADEA") for alleged discrimination based upon age;

5) "Malicious interference with employment";

6)      Breach of duty of good faith and fair dealing;

7)      Intentional infliction of emotional distress; and

8)      Negligent infliction of emotional distress.

[1-2], pp. 25-26.

For the reasons discussed below, summary judgment should be granted in favor of DMR as to all claims.

### *Summary Judgment Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F. 2d 1121, 1122 (5th Cir. 1988). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald*, 893 F. 2d 787, 793 (5th Cir. 1990). All facts are considered in favor of the non-moving party, including all reasonable inferences from those facts. *Banc One Capital Partners Corp. v. Kneipper*, 67 F. 3d 1187, 1198 (5th Cir. 1995).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F. 3d at 1075.

In the context of Title VII claims, a substantial conflict in evidence must exist to create a jury question on the issue of discrimination or retaliation. *See Rhodes v. Guiberson Oil Tools*, 75 F. 3d 989, 993 (5th Cir. 1996). In a Title VII discrimination or retaliation case, the non-movant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.' " *Turner v. Baylor Richardson Med. Ctr.*, 476 F. 3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994)). A plaintiff can defeat a motion for summary judgment only if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer; and (2) creates a reasonable inference that race was a determinative factor in the actions of which the plaintiff complains. *Walton v. Bisco Industries, Inc.*, 119 F. 3d 368, 370 (5th Cir. 1997). "Throughout, the ultimate burden of persuasion remains with the plaintiff." *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 875 (M.D. La. 2014) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

*Argument*

1)   **Claims pursuant to 42 U.S.C. § 1983 ("§ 1983") for alleged violations of Coleman's rights under the Fifth and Fourteenth Amendments to the United States Constitution**

A)   *DMR is not a "person" as contemplated by §1983.*

§1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (West). Coleman's claims under § 1983 are barred, because that statute creates rights solely against "persons," and a state and its agencies are not considered "persons" under the statute. *Bryant v. Military Dep't of State of Miss. ex rel. Miss. Air Nat. Guard*, 381 F. Supp. 2d 586, 592 (S.D. Miss. 2005), aff'd sub nom. *Bryant v. Military Dep't of Mississippi*, 597 F. 3d 678 (5th Cir. 2010) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983")). As such, Coleman's §1983 cannot stand against DMR.

B)   *Sovereign Immunity*

Coleman's claims for monetary damages against DMR pursuant to §1983 are also barred by sovereign immunity. The principle of sovereign immunity is reflected in the

Eleventh Amendment, which precludes suits brought by private citizens against states in federal courts unless the State has waived its immunity. U.S. Const. Amend XI; *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Mississippi has not waived its right to sovereign immunity from either suit or liability. See Miss. Code Ann. §11-46-5(4). A state may waive its right to sovereign immunity only by "using the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Sherwinski v. Peterson,* 98 F. 3d 849, 852 (5th Cir. 1996).

Sovereign Immunity extends to any state agency or entity deemed to be "an arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F. 3d 318, 326 (5th Cir. 2002). DMR is an agency created by the Mississippi legislature. Miss. Code Ann. §49-15-11 (as amended).  The Mississippi legislature has referred to DMR as a "state agency."[1] Furthermore, the Mississippi Court of Appeals has determined DMR to be "immune from liability under a § 1983 claim." *Dunston v. Mississippi Dep't of Marine Res.*, 892 So. 2d 837, 843 (Miss. Ct. App. 2005). As such, DMR is an arm of the state and enjoys sovereign immunity from liability in this matter.

Generally, a state defendant waives sovereign immunity from *suit* under the Eleventh Amendment when it removes a case from state to federal court. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005) (*citing Lapides v. Board of*

---

[1] "The Department of Marine Resources, referred to in this chapter as 'department,' shall serve as the primary state agency with regard to coordinating channel maintenance activities along the Mississippi Gulf Coast. Miss. Code. Ann. § 49-26-5 (West)

*Regents of University System of Georgia*, 535 U.S. 613 (2002)). However, by consenting

to suit in a federal forum, a state does not waive its immunity from *liability*. "The waiver

that results from a state's removal does not affect or limit the State's ability to assert

whatever rights, immunities or defenses are provided for by its own sovereign immunity

law to defeat the claims against the State and finally on their merits in the federal courts."

*Dansby-Giles v. Jackson State Univ.*, 2010 WL 780531, at *4 (S.D. Miss. Feb. 28, 2010)

(citing *Meyers v. Texas*, 454 F. 3d 503, 504 (5th Cir.2006)). Such a complete waiver

requires an unequivocal act of Congress pursuant to a valid grant of constitutional

authority, *see Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), or a failure

on behalf of a state to establish its immunity. *See Benzing*, 410 F.3d at 253. Neither is

present in the instant matter.

Furthermore, in *Lapides*, the Supreme Court reaffirmed that the waiver-by-removal

rule is inapplicable to lawsuits raising Section 1983 claims, as a state is not a "person"

under Section 1983. *Lapides*, 535 U.S. at 617. Thus, even if a state waives its sovereign

immunity, claims seeking monetary relief under "§ 1983 ... do not lie against a [s]tate."

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, 117 S. Ct. 1055, 137 L. Ed. 2d

170 (1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304,

105 L. Ed. 2d 45 (1989)). DMR is immune from liability for Coleman's §1983 claims.

### C)     No Evidence of Discrimination

Setting aside the issues of the applicability of §1983 and DMR's immunity from

liability under same, Coleman cannot produce any evidence that she was subjected to

discrimination by DMR. The inquiry and analysis are the same for Coleman's §1983 discrimination claim and her Title VII discrimination claim. "Because the 'inquiry into intentional discrimination in public employment is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII,' to succeed on a claim for intentional discrimination under Section 1983, Plaintiff must first prove a *prima facie* case of discrimination either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework." *Pree v. Washington Cty. Bd. of Supervisors*, 2017 WL 473906, at *3 (N.D. Miss. Feb. 3, 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F. 3d 157, 166 (5th Cir. 2007); *Wallace v. Tex. Tech Univ.*, 80 F. 3d 1042, 1047 (5th Cir. 1996)).

Through the discovery process, Coleman has been unable to develop any direct evidence of discrimination. Thus, the Court must analyze her claims utilizing the *McDonnell Douglas* burden-shifting framework. Under that framework, Coleman has the initial burden of making a *prima facie* showing of discrimination. *Turner v. Kan. City S. Ry. Co.*, 675 F. 3d 887, 892 (5th Cir. 2012). A plaintiff establishes a *prima facie* case of employment discrimination by showing that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees

outside the protected group." *Fahim v. Marriott Hotel Servs.*, 551 F. 3d 344, 350 (5th Cir. 2008) (quoting *McCoy v. City of Shreveport*, 492 F. 3d 551, 556 (5th Cir. 2007)) (internal quotation marks omitted). As noted above, following the termination of Coleman's employment, her job duties were fully assumed by a 68 year old female. *Ex. 3, Jewell Depo.*, pp. 11-13. As such Coleman cannot meet her initial burden of establishing a *prima facie* case of gender-based discrimination.

### D)    No constitutionally protected interest

To the extent that Coleman is claiming that she had a constitutionally protected interest in her employment of which she could not be deprived without due process of law, that claim must also fail. The Fifth Circuit has found that when the Mississippi Legislature exempts an agency from State Personnel Board rules, regulations and procedures, as was done here, the Legislature intends to, and does, suspend any property interest in employment at that agency for the prescribed time. *McMurtray v. Holladay*, 11 F. 3d 499, 504 (5th Cir. 1993). "The Supreme Court long ago established that, when a legislature extinguishes a property interest via legislation that affects a general class of people [i.e. - all the employees of an agency], the legislative process provides all the process that is due." *Id.* (citing *Bi–Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46, 36 S. Ct. 141, 142–43, 60 L. Ed. 372 (1915); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S. Ct. 1148, 1156, 71 L. Ed. 2d 265 (1982); *Jackson Court Condominiums v. City of New Orleans*, 874 F. 2d 1070, 1074 (5th Cir. 1989). Thus, at the time of the termination of her employment, Coleman had no property interest in same.

2)      **Claims pursuant to 42 U.S.C. § 2000e, *et seq*., Title VII of the Civil Rights Act of 1964 ("Title VII"), for alleged gender based discrimination, hostile work environment sexual harassment and "retaliatory treatment"**

As noted above, Coleman cannot meet her initial burden of establishing a *prima facie* case of gender-based discrimination regarding her termination. This leaves her claims for hostile work environment sexual harassment and "retaliatory treatment" to be considered.

A)      *Hostile Work Environment Sexual Harassment*

"A plaintiff who alleges a hostile work environment claim pursuant to Title VII must typically prove five elements: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action." *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F. 3d 383, 393 (5th Cir. 2007).

As noted above, in her deposition, Coleman could not point to a single instance of conduct by anyone at DMR against her from June 2009 - forward that could conceivably be classified as sexual harassment. As such, this claim simply must fail.

B)      *"Retaliatory Treatment"*

Coleman also asserts a Title VII claim for "retaliatory treatment." It is unclear exactly what Coleman is actually asserting here. In her notice of claim to DMR, Coleman asserts that her termination was in retaliation for:

1)      Filing her worker's compensation claim;

2)      Filing an internal complaint of gender-based discrimination and hostile work environment against former Chief of Staff, Joe Ziegler "in or around 2007"; and

3)      Filing an appeal with the Mississippi Employee Appeals Board ("EAB").

*Notice of Claim, Ex. 5*.

To establish a *prima facie* case of Title VII retaliation, "a plaintiff must show that: (1) [s]he engaged in activity protected by Title VII; (2) [s]he was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F. 3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F. 3d 570, 575 (5th Cir. 2003)).

"[I]t is evident that filing a workers' compensation claim is not protected activity under Title VII or the ADEA." *Buckhanan v. Shinseki*, 2013 WL 5517903, at *3 (S.D. Miss. Oct. 3, 2013) (citing *Tratree v. BP North American Pipelines, Inc.*, 277 Fed. Appx. 390, 396 (5th Cir. 2008); *Armstrong v. K & B Louisiana Corp.*, 488 Fed. Appx. 779, 781 (5th Cir. 2012). Thus, any claim for retaliation for Coleman's workers' compensation claim under Title VII must fail as a matter of law.

Furthermore, Coleman cannot establish a "causal link" between the termination of her employment and any of the activities described above. To satisfy the "causal link" requirement of a Title VII retaliation claim, the employee must provide "substantial evidence that 'but for' exercising protected rights, she would not have been discharged."

*Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F. 3d 702, 705 (5th Cir. 2016)

(citing *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2533 (2013)). In

determining whether Plaintiff can prove a causal connection, the Court considers "(1) the

employee's past disciplinary record, (2) whether the employer followed its typical policy

and procedures in terminating the employee, and (3) the temporal proximity between the

employee's conduct and termination." *Valderaz v. Lubbock Cty. Hosp. Dist.*, 611 Fed.

Appx. 816, 823 (5th Cir. 2015) (quoting *DeHart v. Baker Hughes Oilfield Operations*,

Inc., 214 Fed. Appx. 437, 442–43 (5th Cir. 2007)).

As discussed *supra*, Coleman had some disciplinary issues in the time leading up

to the termination of her employment. However, as is also discussed *supra*, the primary

reason for her termination was part of a larger reorganization of DMR. The procedures

associated with the reorganization, as sanctioned by the Mississippi Legislature, were

followed to the letter.

Temporal proximity is a major issue for Coleman on each of the claimed protected

activities. On several instances, the Fifth Circuit has declined to find sufficient temporal

proximity even where the time period between protected activity and an adverse

employment action is less than one year.[2] Coleman filed the referenced workers'

compensation claim in 2008. *Ex. 7, MWCC printout*. She filed her internal complaint of

gender-based discrimination and hostile work environment against Ziegler "in or around

---

[2] *See Bell v. Bank of America*, 171 Fed. Appx. 442, 444 (5th Cir. 2006) (seven months); *Myers v. Crestone Intern., LLC*, 121 Fed. Appx. 25, 28 (5th Cir. 2005) (three months); *Harvey v. Stringer*, 113 Fed. Appx. 629, 631 (5th Cir. 2004) (ten months); *Raggs v. Miss. Power & Light Co.*, 278 F. 3d 463, 471-72 (5th Cir. 2002) (five months).

2007". *Ex. 5, Notice of Claim*. The EAB matter referenced in Coleman's notice of claim

was concluded in May 2007.  *Ex. 6, EAB Order*. The time between these events and the

termination of her employment was 6-7 years. Coleman simply cannot establish a causal

connection between any of the claimed protected activities and the termination of her

employment. Her retaliation claim is therefore without merit.

       C)     *Punitive Damages*

      To the extent that Coleman is making a claim for punitive damages under Title

VII, that claim must also be dismissed. *See Oden v. Oktibbeha County, Miss.*, 246 F. 3d

458, 465-66 (5th Cir. 2001) (holding that punitive damages unavailable for Title VII

claims against a governmental entity).

      For these reasons, Coleman's claims pursuant to Title VII should be dismissed.

   **3)**      **Claims pursuant to 42 U.S.C. § 12101, et seq., The Americans with
Disabilities Act of 1990 ("ADA"), for alleged discrimination based upon
"regarding and/or perceiving an employee as disabled and/or
impaired"**

Coleman has sued DMR under Title I of the ADA, which prohibits disability

discrimination in employment. See 42 U.S.C. § 12112(a) (providing that no covered

employer may discriminate against "a qualified individual with a disability because of the

disability of such individual" in any of the "terms, conditions [or] privileges of

employment"). DMR is entitled to dismissal of Coleman's claims for money damages and

for injunctive relief under the ADA on the basis of Eleventh Amendment immunity. The

Eleventh Amendment bars suits against States and state entities in federal court regardless

of the nature of the relief requested. *Puerto Rico Aqueduct and Sewer Authority v.*

*Metcalf & Eddy*, 506 U.S. 139, 145-146 (1993); see also *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (holding that a state (or an arm of a state) "cannot be sued directly in its own name regardless of the relief sought"). Although Congress may abrogate the states' immunity in certain situations, the United States Supreme Court has held that Congress's purported abrogation of states' Eleventh Amendment immunity from suits by private individuals for money damages under Title I of the ADA was invalid. *Board of Trustees of the University of Alabama v. Garrett* , 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001). The State of Mississippi has not otherwise waived its Eleventh Amendment immunity as to Coleman's demand for relief under the ADA.

Immunity aside, Coleman's ADA claim is nevertheless due for dismissal for two reasons. First, it is time barred. Before initiating an action under either the ADA, an employee must file charges with the EEOC within one hundred and eighty (180) days after the alleged unlawful practice. *Graise v. City of Greenville, Mississippi*, 2017 WL 1743780, at *2 (N.D. Miss. May 3, 2017) (citing *McCollum v. Puckett Machinery Co.*, 628 Fed.Appx. 225, 228 (5th Cir. 2015); *Taylor v. General Telephone Co. of Southwest*, 759 F. 2d 437, 438 (5th Cir. 1985)). "This requirement operates as a statute of limitations and, consequently, bars any such claims unless the plaintiff can demonstrate that the application of equitable tolling is justified." *Id*. (citing *Hood v. Sears Roebuck and Co.*, 168 F. 3d 231, 232 (5th Cir. 1999)). To the extent that Coleman claims that she was "demoted" to handling trip tickets because of her depression, or because DMR perceived

her as being otherwise disabled, such a claim would be time barred, as Coleman was transferred to Marine Fisheries in or around July 2009. She did not file her EEOC charge until after the termination of her employment in October 2014.

Second, Coleman cannot meet her initial summary judgment burden. In order to make a *prima facie* case for discrimination under the ADA, Coleman must allege and show (1) she has a disability or was perceived as having a disability; (2) she was qualified for the job; and (3) that she was subject to an adverse employment on account of her disability. *Weed v. Sidewinder Drilling, Inc.*, 2017 WL 1164294, at *6 (S.D. Tex. Mar. 29, 2017) (citing *EEOC v. LHC Group, Inc.*, 773 F. 3d 688, 697 (5th Cir. 2014); *Zenor v. El Paso Healthcare System, Ltd.*, 176 F. 3d 847, 853 (5th Cir. 1999)).

To the extent that Coleman is claiming that her employment was terminated because of her depression, or because DMR perceived her as being otherwise disabled, she simply cannot establish a causal connection. Coleman testified in her deposition that she has was diagnosed with depression some time prior to May 2008. *Ex. 1*, *Coleman Depo.*, pp. 93-94. This was nearly a year after she was removed from her position as manager of the fish hatchery, and her employment was not terminated for more than six years thereafter. In order for the court to find a causal connection, the temporal proximity of the events must be very "very close." *Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). There is no causal connection between Coleman's depression and the termination of her employment.

For each of these independent reasons, Coleman's ADA claim must fail.

4)      **Claims pursuant to 29 U.S.C. § 621, et seq., the Age Discrimination in Employment Act of 1967 ("ADEA") for alleged discrimination based upon age**

In *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000), the United States Supreme Court determined that while Congress intended for the ADEA to be applicable to the states, it had exceeded its authority in this regard. "In light of the indiscriminate scope of the Act's [ADEA] substantive requirements, and the lack of evidence of widespread and unconstitutional age discrimination by the States, we hold that the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment." *Id.* at 91. The Supreme Court concluded that Congress did not abrogate the states' sovereign immunity with respect to ADEA claims asserted against a state. *Id.* at 66. *See also Saucier v. Mississippi Dep't of Corr.*, 2013 WL 4678457, at *3 (S.D. Miss. Aug. 30, 2013). The State of Mississippi has not waived its sovereign immunity from liability under the ADEA. *Barrett v. Mississippi Dep't of Pub. Safety*, 2013 WL 4015094, at *5 (S.D. Miss. Aug. 6, 2013). As such, Coleman's claims under the ADEA must be dismissed on grounds of sovereign immunity.

Furthermore, even if sovereign immunity did not apply to Coleman's claims under the ADEA, Coleman is nevertheless unable to make a *prima facie* case for discrimination under the ADEA. "Under the Age Discrimination in Employment Act (ADEA), an employer may not 'discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Phillips v. Leggett & Platt, Inc.*, 658 F.

3d 452, 455 (5th Cir. 2011) (quoting 29 U.S.C. § 623(a)(1)). To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show that she was: (1) terminated; (2) qualified for the position from which she was terminated; (3) within the protected age group at the time of termination; and (4) replaced by someone younger or outside the protected class, or otherwise discharged because of her age. *Phillips*, 658 F. 3d at 455. To ultimately succeed on a claim of age discrimination, "[a] plaintiff must prove by a preponderance of the evidence ... that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F. 3d 917, 922 (5th Cir. 2010).

Again, following the termination of Coleman's employment, her job duties were fully assumed by a 68 year old female. *Ex. 3, Jewell Depo*., pp. 11-13. At the time, Coleman was 63. *Id*. Coleman therefore cannot make a *prima facie* case for ADEA discrimination, and this claim must also fail.

**5)      42 U.S.C. §§ 1985 & 1986 Claims**

Coleman alleges that the defendants violated 42 U.S.C. § 1985 by conspiring to deprive or injure her "in her person, liberty or property, . . . with the intent to deny her the equal protection of the laws." *First Amended Complaint*, [1-2], pp. 9-10. Section 1986 penalizes those with knowledge of and the power to prevent §1985 conspiracies who fail to do so. 42 U.S.C. § 1986. Coleman's claims under §1985 and 1986 are barred as against DMR, because these statutes create rights solely against "persons," and "a state is not considered a 'person' under these statutes." *Bryant v. Military Dep't of State of Miss. ex*

*rel. Miss. Air Nat. Guard*, 381 F. Supp. 2d 586, 592 (S.D. Miss. 2005), aff'd sub nom.

*Bryant v. Military Dep't of Mississippi*, 597 F. 3d 678 (5th Cir. 2010) (citing *Will v.*

*Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45

(1989).

Furthermore, "a state agency and its officers represent a single entity; as a matter

of law state officials of a single agency generally cannot conspire with their employer

agency or with one another in the carrying out of their official duties as agency

employees." *Fontenot v. Texas*, 1994 WL 733405, *4 (5th Cir. 1994).

**6)    State law claims ("malicious interference with employment", breach of
        duty of good faith and fair dealing, intentional infliction of emotional
        distress; and negligent infliction of emotional distress)**

Plaintiff also asserts several state law claims, which are addressed, in turn, as

follows:

### A)    *Malicious Interference with Employment*

A "malicious interference claim [against a political subdivision] is subject to a

one-year statute of limitations." *Brown v. City of Saltillo*, 106 F. Supp. 3d 784, 792 (N.D.

Miss. 2015). Any such claim by Coleman would have arisen during her employment with

DMR, which ended in October 2014. Coleman served her notice of claim in October

2015. *Ex. 5, Notice of Claim*. This only served to toll the statute of limitations by ninety-

five (95) days. Miss. Code Ann. §11-46-11(3)(a) (as amended). Plaintiff did not file her

initial complaint until April 6, 2016. *Complaint*, [1-2], p. 3. As such, this claim should be

dismissed as time barred.

This claim must also fail on its merits. "An action for tortious interference . . . ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party." *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss.1999). However, the tort requires that the offender not be a party to the contract. "A party to a contract cannot be charged with interfering with his own contract." *Cenac v. Murry*, 609 So. 2d 1257 (Miss. 1992). *See also Prosser & Keeton, The Law of Torts*, § 129, 990 (5th ed. 1984). This means that an employer cannot be charged with interfering with its own employment contract. *Brown v. Prentiss Regional Hosp.*, 2013 WL 610520, 10 (S.D. Miss. Feb. 19, 2013). This tort is reserved for third parties, not those involved with the employment contract. No genuine issue of material fact exists as to whether the DMR was Ms. Coleman's employer, making it an improper defendant in a claim for malicious interference. Therefore, summary judgment on this issue is appropriate for DMR.

### B)      *Breach of Duty of Good Faith and Fair Dealing*

Like Coleman's other state law claims, this claim is time barred. Miss. Code Ann. §11-46-11(3)(a). Furthermore, it is without merit.

A breach of the duty of good faith and fair dealing is a tort under Mississippi law and "emanates from the law on contracts." *Illinois Cent. R. Co. v. Harried,* 681 F. Supp. 2d 772, 778 (S.D. Miss. 2009) (quoting *Braidfoot v. William Carey College,* 793 So. 2d 642, 651 (Miss. Ct. App. 2001)). However, in Mississippi, "there is no implied duty of good faith and fair dealing in employment contracts." *Cothern v. Vickers, Inc.*, 759 So. 2d

1241, 1248 (Miss. 2000) (citing *Hartle v. Packard Elec.*, 626 So. 2d 106, 110

(Miss.1993); *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1089 (Miss.1987)).

Coleman's claims are entirely focused on her employment with DMR.

  No genuine issue of material fact exists as to whether DMR was Ms. Coleman's

employer, summary judgment on this issue in favor of DMR is appropriate.

C)   *Intentional and Negligent Infliction of Emotional Distress*

  Coleman claims that she was subjected to intentional or negligent infliction of

emotional distress. Neither claim has merit.

  First, her claim for intentional infliction of emotional distress is time barred.

"[T]he tort of intentional infliction of emotional distress is of like kind or classification as

the torts enumerated in Section 15-1-35 . . . and it too carries a one-year statute of

limitations. *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (Miss. 2010). Any

such claim by Coleman would have arisen during her employment with DMR, which

ended in October 2014. Plaintiff did not file her initial complaint until April 6, 2016.

*Complaint*, [1-2], p. 3.

  Furthermore, Coleman can produce no evidence to meet the high standard

necessary to sustain a claim for intentional infliction of emotional distress. The tort of

intentional infliction of emotional distress is the Mississippi equivalent of the tort of

outrage. *Bombardier Capital, Inc. v. Royer Homes of Miss., Inc.*, 2006 WL 1328907, *3

(S.D. Miss. May 15, 2006). To rise to the level of intentional infliction of emotional

distress, conduct must be "wanton or willful and that it would evoke outrage or

revulsion." *Dawkins v. Sears Roebuck & Co.*, 109 F. 3d 241, 244 (5th Cir. 1997) (quoting *Peoples Bank and Trust Co. v. Cermack*, 658 So.2d 1352, 1365 (Miss.1995)). Not only must the conduct be wanton and willful, but it must also be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). A claim of this type does not arise out of insults, annoyances, or even discrimination. As such, damages for such a claim are usually not recoverable in mere employment disputes. *Brown v. Inter-City Federal Bank for Sav.*, 738 So. 2d 262, 265 (Miss. Ct. App. 1999). Coleman cannot produce any evidence to meet this high bar, and her claim for intentional infliction of emotional distress must be dismissed.

The claim for negligent infliction of emotional distress is likewise time barred. Miss. Code Ann. §11-46-11(3)(a).

Coleman's state law claims are all due for dismissal.

### Conclusion

For the foregoing reasons, DMR respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted this the 16th day of June, 2017.

**MISSISSIPPI DEPARTMENT OF MARINE RESOURCES, DEFENDANT**

**JIM HOOD, ATTORNEY GENERAL STATE OF MISSISSIPPI**

BY: */s/ Benny M. May*

      BENNY M. MAY (MSB #100108)

Office of the Attorney General
Civil Litigation Division
Post Office Box 220
Jackson, Mississippi 39205
Email: bemay@ago.state.ms.us
Telephone: (601) 359-3680
Facsimile: (601) 359-2003

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system, which will automatically send notice to all counsel of record.

This, the 16th day of June, 2017.

      */s/ Benny M. May*