IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

AVA R. COLEMAN                                                                PLAINTIFF

v.                                                              CAUSE NO. 1:16CV289-LG-RHW

MISSISSIPPI DEPT. OF MARINE RESOURCES;
JAMIE M. MILLER, Individually and as Executive
Director/Agent; and JOHN/JANE DOES 1-2                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [33] Motion for Summary Judgment filed by the remaining Defendant in this case, the Mississippi Department of Marine Resources. Plaintiff Ava R. Coleman has responded, and the MDMR has replied. After due consideration of the submissions and the relevant law, it is the Court's opinion that the MDMR has shown there is no question of material fact for the jury. Accordingly, the defendant's Motion is granted and Plaintiff's claims are dismissed.

BACKGROUND

Plaintiff Ava Coleman filed this lawsuit in the Circuit Court of Harrison County, Mississippi, complaining of termination from her long-time employment with the State of Mississippi. She had been employed by the Department of Wildlife, Fisheries and Parks ("DWFP") as the Lyman Fish Hatchery Manager for fifteen years when, in 2007, she was asked to transfer to the Mississippi Department of Marine Resources ("MDMR"). She was to remain the Hatchery Manager, but she would be required to move from her on-site residence at the Hatchery.

Coleman alleges that shortly after accepting the transfer, she began experiencing harassment and hostilities from the MDMR Chief of Staff, Joe Ziegler. She alleges during the next year, Ziegler did not supply her with the assistance and supplies she needed, locked her out of her office, placed an unqualified person as her supervisor, and lodged "bogus" disciplinary actions against her.

Coleman filed grievances concerning Ziegler's actions to the Mississippi Employee Appeals Board. She alleges that an informal recommendation was made that the MDMR find a suitable position for her. After she returned to work and waited for a resolution, she found that she needed to request an extended medical leave to manage her feelings of anxiousness and fearfulness. Her request was granted in May 2008. Slightly more than one year later, in June 2009, Coleman returned to work. She was placed in a low-level, non-managerial, non-supervisory job at the MDMR and moved from her residence at the Hatchery. She then filed a Workers' Compensation Claim for job-related emotional distress, which resulted in a settlement in September 2014. A few weeks later, Coleman was terminated by letter from MDMR executive director Jamie Miller, effective October 9, 2014. (Am. Compl. Ex. A, ECF No. 7). Coleman alleges she was terminated for leaving the workplace without authorization. Miller's letter does not specify a reason for her termination, but informed Coleman that

> [i]n accordance with the Mississippi Department of Marine Resources Accountability and Reorganization Act (Senate Bill No. 2579, effective April 17, 2014), the MDMR is exempt from State Personnel Board rules, regulations, and procedures. During this exemption, you do not have state service protection, and may be terminated without cause or

advanced notice.

(Pl. Resp. Attach 2 to Ex. C, ECF No. 37-4).

Coleman's First Amended Complaint contains nine Counts. (Notice of Removal Ex. A 25-42, ECF No. 1-2). Count One is a Fourteenth Amendment claim brought pursuant to 42 U.S.C. § 1983. Count Two alleges violations of §§ 1983, 1985, and 1986. Counts Three through Six are state law claims of breach of contract, interference with contract, and infliction of emotional distress. The last three Counts allege employment discrimination under Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act (Counts Seven, Eight and Nine).

Earlier in the case, the Court dismissed Coleman's claims against Defendant Jamie Miller, the MDMR executive director, in his individual and official capacity. (Mem. Op. & Order Granting Mot. to Dismiss, ECF No. 13), *Coleman v. Miss. Dep't of Marine Res.*, No. 1:16cv289-LG-RHW, 2016 WL 5794772 (S.D. Miss. Oct. 4, 2016). Although given the opportunity to amend her claims against Miller, Coleman did not do so.

The MDMR now moves for judgment as a matter of law on all of the claims against it. Coleman has responded in opposition, although she expressly conceded her Age Discrimination in Employment Act claim. (Pl. Resp. Mem. 18, ECF No. 38). The MDMR has replied in support of its Motion. The Court addresses the arguments regarding the remaining claims below.

DISCUSSION

**42 U.S.C. §§ 1983, 1985, and 1986**

The MDMR argues that Coleman may not bring a viable claim against it pursuant to sections 1983, 1985 or 1986 because it is not a "person" under those statutes. *Bryant v. Military Dep't of State of Miss. ex rel. Miss. Air Nat. Guard*, 381 F. Supp. 2d 586, 592 (S.D. Miss. 2005), aff'd sub nom. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678 (5th Cir. 2010) (claims under §§ 1983, 1985 and 1986 barred because these statutes create rights solely against "persons" and a state is not considered a "person" under these statutes). Coleman argues that she has requested injunctive relief, and she can bring a viable claim for injunctive relief against a state official in his official capacity under these statutes, citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, n. 10 (1989).

Although there was a state official defendant in this lawsuit at one time, the claims against him were dismissed, and Coleman declined the opportunity to file amended claims against him. Thus, only the State entity itself remains as a defendant. The law is clear that the State is not a person for purposes of §§ 1983, 1985 and 1986, and therefore Coleman's claims against the MDMR pursuant to these statutes will be dismissed.

**Title VII**

Coleman's Title VII claims encompass sex/gender discrimination, hostile working environment and retaliation. In her Amended Complaint, response to this Motion, and affidavit attached to her response, Coleman refers to a charge of

discrimination she made to the Equal Employment Opportunity Commission. The Court is unable to locate it, or any EEOC documentation, in the record. "In order to file suit under Title VII, a plaintiff first must file a charge with the EEOC within 180 days of the alleged discriminatory act. If and once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to file a Title VII action." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). These time periods act as statutes of limitation. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). If the employee files a Title VII action, the claims must have been asserted in the formal charge of discrimination to the EEOC, or be claims that could be reasonably expected to grow out of the formal charge. *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). The MDMR does not challenge Coleman's employment discrimination claims for failure to exhaust her Title VII remedies, and therefore the Court will assume for purposes of this Motion that the plaintiff's charge was timely and included the grounds she has asserted here.

   *a. Sex Discrimination*

Coleman argues that she experienced sex discrimination at the time of her termination because she was qualified to assume other positions in the MDMR that "less experienced, less qualified males" held. (Pl. Resp. Mem. 11-12, ECF No. 38). Essentially, a less experienced male should have been terminated so that she could have his position. Also, she was not offered the option of retirement while a male colleague, terminated during the same period, was given that choice. (*Id.* at 12).

Because the evidence offered to support Coleman's sex discrimination claim is circumstantial rather than direct, she must establish a claim of discrimination under the *McDonnell Douglas* framework, and first make out a prima facie case of discrimination. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-14 (5th Cir. 2001); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This requires Coleman to demonstrate that (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she was discharged; and (4) after being discharged, her employer replaced her with a person who is not a member of the protected class, or those not members of the protected class remained in similar positions. *Buchanan v. CCA Tallahatchie Cty. Corr. Facility*, No. 4:16CV00200-SA-JMV, 2017 WL 875997, at *3 (N.D. Miss. Jan. 3, 2017), report and recommendation adopted, No. 4:16-CV-200-SA-JMV, 2017 WL 875852 (N.D. Miss. Mar. 3, 2017), aff'd sub nom. *Buchanan v. CCA/Tallahatchie Cty. Corr. Facility*, No. 17-60178, 2017 WL 3098177 (5th Cir. July 20, 2017); *Okoye*, 245 F.3d at 512-14.

The MDMR addresses only the fourth prima facie element, asserting that Coleman's job duties were assumed by a sixty-eight year old female, Ms. Ross. According to one of Coleman's supervisors, Coleman had been assisted in her data collection activities by Ross and others, and Ross was given the primary responsibility for the data collection after Coleman was terminated. (Def. Mot. Ex. 3, at 11-14, ECF No. 33-3). Ross' duties are reassigned to other MDMR employees

only when Ross takes leave or a vacation day. (*Id*. at 12, 44-45). Thus, MDMR argues that Coleman cannot establish a prima facie case of sex discrimination because she was replaced by someone in her same protected class.

Coleman agrees that her work is now being performed by Ross, (an "elderly contract worker" "with very limited qualifications"), but states that a younger male colleague performs the work as well. (Pl. Resp. Ex. A 3, ECF No. 37-1). Coleman's testimony about who performs her previous work comports with the MDMR's explanation of her replacement, and does not establish that she was replaced by someone outside her protected class.

Coleman also attempts to establish the fourth element by arguing that males remained in similar positions, and she was treated differently than male workers in similar circumstances. "Employees may also raise an inference of discrimination if they compare their treatment to that of nearly identical, similarly situated individuals who were not terminated." *Vital v. Nat'l Oilwell Varco, L.P.,* 685 F. App'x 355, 359 (5th Cir. 2017).

The MDMR shows that Coleman cannot establish that those not members of her protected class remained in similar positions or were treated more favorably. Coleman was one of sixteen employees terminated pursuant to the DMR Accountability and Reorganization Act. (Def. Mot. Ex. 2, at 1-2, ECF No. 33-2). Eleven of the terminated employees were males; five were females. (*Id*.). Beyond a bare argument that she was qualified by the classification of her job title for four other positions in the MDMR held by males who were not terminated, Coleman

makes no attempt to show that a male was retained in a position similar to hers. (Pl. Resp. Mem. 11-12, ECF No. 38). This is insufficient to show that she was treated differently than the male workers. *See Graham v. Bluebonnet Trails Cmty. Servs.*, 587 F. App'x 205, 207 (5th Cir. 2014). Further, according to Coleman's testimony, MDMR officials were motivated by a desire to preferentially retain Ross; "somebody was trying to save [Ross'] job, so they fired me." (Pl. Resp. Ex. A 137-38, ECF No. 37-1).

The MDMR also argues that Coleman was not offered retirement rather than termination because she refused to speak with the Human Resources Director about her pending termination. (Def. Mot. Ex. 2, at 2, ECF No. 33-2). Coleman had not even looked at the notice of termination letter until her deposition. (Pl. Resp. Ex. 2, at 126, ECF No. 37-2) ("This is the first time I have ever looked at this . . . . I don't want to look at it. Do I have to?"). Coleman testified that on the day she learned she would be terminated, she had gone into the office to get keys and have her leave slip signed. Joe Jewell (Coleman's secondary supervisor) refused to approve her leave request, and told her "they're getting ready to call you upstairs, and it ain't going to be good." (Pl. Resp. Ex. A 128-32, 151, ECF No. 37-2). Coleman testified "I said, Joe, I'm going. I'll see you later . . . . And so I left, and then [Human Resources Director] Christy called me on the phone and told me to come back. I told her, no, I was on vacation and to leave me alone." (*Id.* at 132-33). Coleman has since filed for her retirement benefits. (*Id.* at 143).

Coleman must show that differences between her conduct and that of the

male colleague she alleges was offered retirement in lieu of termination did not account for the differential treatment they received. *Ratliff v. Advisors Asset Mgmt., Inc.*, 660 F. App'x 290, 292 (5th Cir. 2016). Because she provides no evidence of the conduct of her male colleague comparator, Coleman's Title VII discrimination claim fails as a matter of law. *Id.*

   *b. Hostile Work Environment*

To prevail on her hostile work environment claim, Coleman must establish that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on gender or race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

> We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance.

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (ellipsis in original) (internal citation and quotation marks omitted). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Title VII is intended only to prohibit and prevent

conduct "that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). It is a "demanding" standard that requires proof of severe or pervasive conduct that can be characterized as "extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

Coleman complains that following her transfer to the MDMR in 2007, she began experiencing harassment and hostilities from the MDMR Chief of Staff, Joe Ziegler. She alleges that during 2008, Ziegler did not supply her with the assistance and supplies she needed, locked her out of her office, pressured her to leave the Hatchery residence, placed an unqualified person as her supervisor, and lodged "bogus" disciplinary actions against her.[1] In her response memorandum,

---

[1] She described one disciplinary incident that occurred while she was supervising two young men mowing grass at the Hatchery:

> Well, I'm cutting the grass, and here I see him coming around in a gold truck he had at that time, a State, gold Yukon . . . . He said, get in the car. I said, Joe, I'm dirty, stinky. I'm cutting grass. He said, Ava, get in the car. I said, Joe, I don't want to get in the car. He said, I'm your supervisor. Get in the car . . . . He was mad, mad, mad that I wouldn't get in the car. I didn't know what he wanted. He had me at this point wondering is he playing with a full deck. Is he going to shoot me? What's the matter with him? I wouldn't get in the car. Had he not talked to me like he did, I would have told him, look, Joe,

Coleman asserts the following as additional evidence of a hostile work environment: her coworkers viewed her with suspicion and as "an untouchable with a nebulous job" and a "probably undeserved salary;" she was labeled as disruptive; and she was blamed for several incidents with "a few disgruntled co-workers." (Pl. Resp. Mem. 14, ECF No. 38).

The time limitation for filing an EEOC charge asserting hostile work environment is "within [180] days of any action that contributed to the hostile work environment." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007). It is not clear when all of these events took place or precisely when Coleman filed her EEOC charge. Nevertheless, the Court "may consider all of the acts that are alleged to have contributed to the hostile work environment, even though some of them may have taken place outside of the [180-]day filing period." *Id.*

Considering all of the acts that Coleman alleges contributed to a hostile work environment, it appears that Coleman perceived she was treated differently while she worked for the DWFP at the Hatchery because she was not one of the boys. For instance, she complains that she was given a pink-striped four-wheeler because "none of the men wanted to drive" it. (Pl. Resp. Ex. A 50-51, ECF No. 37-2).

When she transferred to the MDMR, Zeigler was chief of staff. (*Id.* at 83). She testified that Zeigler "constantly" pressured her to move from the Hatchery.

---

> I've got those young boys there, and I'm keeping an eye on them. What do you need?

(Pl. Resp. Ex. A 91-92, ECF No. 37-2)

(*Id.*). Zeigler was also "harsh" to other Hatchery employees; "[h]e'd come out there with demands, why isn't this done." (*Id.* at 85). Coleman seems to have perceived Ziegler's treatment of her as a product of his personality, and perhaps a dislike of her.

After Coleman left the Hatchery, her complaints concern how she was treated by female co-workers, who constantly "stirred the pot" because they resented the salary she earned for menial work. (*Id.* at 114-15).

The events Coleman recounts in her deposition are work or personality conflicts that do not involve her sex. Coleman does not provide evidence of sex-based harassment so pervasive and severe that it destroyed her opportunity to succeed in the workplace. As there is insufficient evidence to create a question of material fact for the jury on this claim, it will be dismissed.

*c. Retaliation*

To establish a prima facie case for retaliation, an employee must show that 1) she engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link existed between the protected activity and the adverse action. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005) (citations and internal marks omitted). Coleman argues that she engaged in protected activity twice while she was working at the hatchery – when she filed an internal harassment complaint against Ziegler for angrily demanding that she get in the car with him, and when

she appealed the placement of a written reprimand in her file.[2] (Pl. Resp. Mem. 16, ECF No. 38).

An employee has engaged in protected activity under Title VII if she has (1) "opposed any practice made an unlawful employment practice by this chapter," or (2) "made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Byars v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000). The evidence here is that Coleman's complaints of harassment had to do with treatment by her supervisors that Coleman felt was unfair. The "discrimination" alleged was unfair treatment which, unless it is based on a protected trait, is not prohibited by Title VII. *See Tratree v. BP N. Am. Pipelines, Inc.* 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not protected activity."); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.* 150 F. App'x 315, 319 (5th Cir. 2005) ("Moore . . . was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful

---

[2] Although Coleman states that she "successfully grieved and appealed" the MDMR's disciplinary action, she was only successful in reducing the reprimand to one set of circumstances rather than three separate incidents. (Pl. Resp. Ex. 3 to Ex. A, ECF No. 37-1). The Hearing Officer found that Coleman had been insubordinate and the written reprimand should stand.

employment practice under Title VII."). Coleman's complaint of unfair treatment by her supervisors without a connection to a protected trait is not an activity protected by Title VII. Accordingly, Coleman does not show there is a question of material fact regarding retaliation. This claim will be dismissed.

**Americans With Disabilities Act**

Coleman alleges that the MDMR regarded her as disabled, and this was the sole or a motivating factor for discrimination and retaliation against her, in violation of the ADA, 42 U.S.C. § 12101 et seq.[3] (Am. Compl. 15-16, ECF No. 1-2). Title I of the ADA prohibits employment discrimination "on the basis of disability." 42 U.S.C. § 12112(a). The MDMR argues that it is entitled to dismissal of this claim on the basis of Eleventh Amendment immunity, and in the alternative, Coleman cannot establish a prima facie case of Title I discrimination.

The United States Supreme Court has "squarely held that suits for employment discrimination under Title I of the ADA brought against state entities are barred by the Eleventh Amendment." *Anderson v. Jackson State Univ.*, 675 F. App'x 461, 463 (5th Cir. 2017) (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001)). Eleventh Amendment immunity deprives this Court of jurisdiction, and therefore the ADA claim will be dismissed without prejudice. *Anderson*, 675 F. App'x at 464 (citations omitted).

---

[3] The exhaustion requirement applies to this ADA claim just as it does to the Title VII claims above. *Dao v. Auchan Hypermarket*, 96 F.3d at 787, 788-89 (5th Cir. 1996). The Court will assume for purposes of this Motion that Coleman presented the ADA claim she makes here to the EEOC.

**State Law Claims**

Coleman alleges claims of malicious interference with employment, breach of duty of good faith and fair dealing, intentional infliction of emotional distress and negligent infliction of emotional distress against the MDMR. The MDMR argues that all of these claims are time-barred by application of the one-year limitation in Miss. Code Ann. § 11-46-11(3)(a).[4] Coleman points to the next subsection, which provides for an additional ninety-day period in which to file suit.[5] She asserts that her Complaint was timely filed when this provision is taken into account. She

---

[4] This provision of the Mississippi Tort Claims Act states:

> All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after, except that filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.

[5] (b) No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires, whichever comes first, after which the claimant has an additional ninety (90) days to file suit; failure to file within the time allowed is an absolute bar to any further proceedings under this chapter.

Miss. Code Ann. § 11-46-11(3)(b).

served her notice of claim on October 6, 2015. The MDMR did not respond to the notice, and therefore the tolling period expired on January 8, 2016, ninety-five days after service of the notice. Coleman had an additional ninety days after January 8, 2016 to file her complaint, or until April 8, 2016. Her complaint was filed two days prior to this "absolute bar," making it timely. Miss. Code Ann. § 11-46-11(3)(b). The MDMR does not rebut Coleman's calculations, and therefore the Court finds that the state law tort claims were timely filed.

### a. Malicious Interference With Employment

Tortious interference with at-will employment can be the basis of a tortious interference with contract claim. *Morrison v. Miss. Enter. For Tech., Inc.*, 798 So. 2d 567, 574 (Miss. Ct. App. 2001) (citing *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999)). Tortious interference with contract is defined as "malicious or intentional interference with a valid and enforceable contract *by a third party* which causes one contracting party not to be able to perform and the failure to perform results in a monetary loss for the other contracting party." *Courtney v. Glenn*, 782 So.2d 162, 164-65 (Miss. Ct. App. 2000) (citing *Cenac v. Murry*, 609 So.2d 1257, 1268 (Miss. 1992)) (emphasis added).

The MDMR asserts that it cannot be liable for tortiously interfering with its own employment contract with Coleman, who was an at-will employee by operation of the MDMR Accountability and Reorganization Act. Coleman does not substantively address the viability of her interference claim, and it is clear that as Coleman's employer, the MDMR was not a third party to Coleman's employment

-16-

contract. Accordingly, the MDMR is entitled to summary judgment on the claim for malicious interference with employment.

### b. *Breach of Duty of Good Faith and Fair Dealing*

The MDMR argues that Coleman's allegations concerning breach of the duty of good faith and fair dealing are centered around her employment contract. Because there is no implied duty of good faith and fair dealing in employment contracts as a matter of Mississippi law, the MDMR cannot breach the duty, and the claim should be dismissed. Coleman responds that the Mississippi Supreme Court has indicated a willingness to follow a minority of states that find an implied duty of good faith and fair dealing in employment contracts.

The controlling case is *Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1248 (Miss. 2000), in which the Mississippi Supreme Court stated that "[t]his Court has held that there is no implied duty of good faith and fair dealing in employment contracts." The court then acknowledged the opposite minority view, but stated that the plaintiff would not prevail even if it were to adopt the minority view. *Id*. Despite Coleman's suggestion to do so, this Court has no authority to nudge Mississippi law toward the minority view. Until the Mississippi Supreme Court makes a contrary pronouncement, this Court must follow existing law holding that there is no implied duty of good faith and fair dealing in employment contracts. Therefore, the MDMR is entitled to summary judgment on the claim for breach of the duty of good faith and fair dealing.

*c. Inflicition of Emotional Distress*

To maintain a claim for negligent infliction of emotional distress, Coleman must establish each of the elements of negligence by a preponderance of the evidence. *Williams v. Lowe's Home Centers, Inc.*, 2007 WL 391567, at *4 (S.D. Miss. 2007) (citing *Miss. Dep't of Transp. v. Cargile*, 847 So. 2d 258, 262 (Miss. 2003)). In the absence of any actionable claim for negligence against the MDMR, Coleman's negligent infliction of emotional distress claim must also fail. *Anderson v. Litton Loan Servicing, LP*, No. CIV.A.2:08-CV-245-KS-MTP, 2010 WL 445593, at *5 (S.D. Miss. Feb. 1, 2010). Having found that Coleman has failed to establish, or raise any genuine issue of material fact as to the element of duty, the Court finds that summary judgment in the MDMR's favor is also warranted on the negligent infliction of emotional distress claim.

To maintain a claim for intentional infliction of emotional distress, Coleman must satisfy a very high standard and demonstrate that the MDMR's conduct was extreme and outrageous, going beyond all possible bounds of decency. *See Brown v. Inter-City Fed. Bank for Sav.*, 738 So. 2d 262, 264 (Miss. Ct. App. 1999). Liability does not extend to "mere insults, indignities, threats, annoyances, or petty oppressions." *Raiola v. Chevron U.S.A. Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004).

Coleman argues that there is sufficient evidence to go to the jury on the issue of intentional infliction of emotional distress, including whether

> DMR, through the acts of its agents and employees, knowingly engaged in extreme and outrageous conduct in a continuing scheme to

> terminate Ms. Coleman on October 9, 2014, in order to punish her for
> her September 18, 2014, workers' compensation lump-sum settlement
> for work-related severe depression and mental distress and
> deliberately deprive her of a beloved career and livelihood under
> circumstances that prevented her from exercising long-held due
> process hearing rights and civil service protections she had every
> reason to expect after decades of loyal service . . . . Defendant
> intentionally used a legislative act enacted to give DMR flexibility in
> reforming the agency after a period of criminal mismanagement to,
> instead, target and eliminate Ms. Coleman and prevent her from
> having any opportunity to answer any charges against her. DMR did
> not even offer Ms. Coleman the option of retirement, even though the
> agency extended that option to at least one of her male colleagues. . . .

(Pl. Resp. Mem. 25, ECF No. 38).

Although Coleman characterizes the disputes, conflicts and grievances during her employment as extreme, the Court finds her allegations concern difficulties arising from personality conflicts. The MDMR appears to have treated Coleman leniently and accommodated her whenever possible. For example, she was informed in April 2007 that she would have to move from the Hatchery residence, but successfully resisted moving for two years. (Pl. Resp. Ex. A 82-84, 96, ECF No. 37-2). She was given a one year leave of absence to manage her emotional difficulties. (*Id*. at 95). After she returned to work and assigned duties she viewed as less important, she nonetheless received the same salary. (*Id*. at 115). Her suspicion that the MDMR used the accountability and reorganization act as an excuse to get rid of her is just that – a suspicion. There is no evidence of a scheme or ulterior motive concerning her termination. The accountability and reorganization act made all MDMR employees terminable at-will, not just those Coleman believes were more deserving of termination. (*See* Re: Senate Bill 2579 (2014), Op. Miss.

Att'y Gen. 2014-00206, 2014 WL 3572785, at *1 (Miss. A.G. June 6, 2014) ("The executive director may make personnel changes without MSPB approval including termination and reorganization of staff and salary adjustments.")). The Court finds that no reasonable jury could find from the evidence produced here that the MDMR's conduct and actions were extreme or went beyond all possible bounds of decency. This claim will be dismissed.

## CONCLUSION

For the reasons discussed above, the Court finds no question of material fact for the jury in regard to any of Coleman's claims against the Mississippi Department of Marine Resources. Accordingly, Coleman's claims will be dismissed with prejudice, with the exception of the ADA claim, which is dismissed without prejudice for lack of jurisdiction.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [33] Motion for Summary Judgment filed by the Mississippi Department of Marine Resources is **GRANTED**. Plaintiff's Americans With Disabilities Act claim is **DISMISSED WITHOUT PREJUDICE.** The remaining claims are **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 12th day of September, 2017.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE